UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF NEW YORK
_____

SUZY F.,

                              Plaintiff,

v.                                                    5:19-CV-981
                                                      (TWD)

COMMISSIONER OF SOCIAL SECURITY,

                              Defendant.
_____

APPEARANCES:                          OF COUNSEL:

MEGGESTO, CROSSETT & VALERINO, LLP     KIMBERLY A. SLIMBAUGH, ESQ.
Attorneys for Plaintiff
313 E. Willow Street, Suite 201
Syracuse, New York 13203

U.S. SOCIAL SECURITY ADMIN.            JAMES J. NAGELBERG, ESQ.
  *Counsel for Defendant*
J.F.K. Federal Building, Room 625
15 New Sudbury Street
Boston, Massachusetts 02203

**THÉRÈSE WILEY DANCKS**, United States Magistrate Judge

## MEMORANDUM-DECISION AND ORDER

Plaintiff Suzy F. ("Plaintiff") brings this action pursuant to 42 U.S.C. § 405(g) seeking

judicial review of a final decision of the Commissioner of Social Security ("Defendant" or

"Commissioner") denying her applications for Social Security Disability Insurance ("SSDI") and

Supplemental Security Income ("SSI"). (Dkt. No. 1.) This case has proceeded in accordance

with General Order 18 of this Court which sets forth the procedures to be followed when

appealing a denial of Social Security benefits. Both parties have filed briefs. (Dkt. Nos. 10, 13.)

Oral argument was not heard. Pursuant to 28 U.S.C. § 636(c), the parties have consented to the

disposition of this case by a Magistrate Judge.  (Dkt. Nos. 6, 8.)  For the reasons discussed

below, the Commissioner's decision denying Plaintiff's disability benefits is affirmed.

I.      BACKGROUND AND PROCEDURAL HISTORY

Plaintiff was born on October 31, 1978.  (Administrative Transcript at 63, 210.[1])  She

was a high school graduate and had obtained a certificate in Computer Software Applications

upon completion of a two-year business college program.  (T. 64, 255.)  Her previous

employment included clerical work for a not-for-profit organization and a position as a soft

account attendant at a casino, responsible for counting and sorting money.  (T. 65-66, 256.)  She

was terminated from this position after her depression and anxiety symptoms led to conflict with

her coworkers and supervisor.  (T. 72.)  Plaintiff testified she had briefly returned to this position

after settling a lawsuit against her employer but was unable to continue due to her physical and

mental impairments.  (T. 74-75.)

On May 4, 2016, Plaintiff filed applications for SSDI and SSI, alleging an onset date of

August 2, 2011.  (T. 210-219.)  Plaintiff's application was initially denied on August 18, 2016.

(T. 91-124.)  Thereafter, Plaintiff filed a written request for a hearing, which was held on May

21, 2018, before Administrative Law Judge ("ALJ") Jeremy G. Eldred.  (T. 59-86.)  During the

hearing, Plaintiff amended her alleged onset date to June 2, 2015.  (T. 27, 62.)  On July 18, 2018,

the ALJ issued a written decision finding Plaintiff was not disabled under the Social Security

Act.  (T. 24-42.)  On July 19, 2019, the Appeals Council denied Plaintiff's request for review,

---

[1]  The Administrative Transcript is found at Dkt. No. 9.  Citations to the Administrative
Transcript will be referenced as "T." and the Bates-stamped page numbers as set forth therein
will be used rather than the numbers assigned by the Court's CM/ECF electronic filing system.
Citations not made to the Administrative Transcript will use the page numbers assigned by the
Court's CM/ECF electronic filing system.

making the ALJ's decision the final decision of the Commissioner.  (T. 1-7.)  Plaintiff

commenced this action on August 9, 2019.  (Dkt. No. 1.)

## II.     RELEVANT LEGAL STANDARD

### A.     Standard for Benefits[2]

To be considered disabled, a plaintiff seeking disability benefits must establish he or she

is "unable to engage in any substantial gainful activity by reason of any medically determinable

physical or mental impairment which can be expected to result in death or which has lasted or

can be expected to last for a continuous period of not less than twelve months."  42 U.S.C. §§

423(d)(1)(A), 1382c(a)(3)(A).  In addition, the plaintiff's

> physical or mental impairment or impairments [must be] of such
> severity that he is not only unable to do his previous work but
> cannot, considering his age, education, and work experience,
> engage in any other kind of substantial gainful work which exists
> in the national economy, regardless of whether such work exists in
> the immediate area in which he lives, or whether a specific job
> vacancy exists for him, or whether he would be hired if he applied
> for work.

42 U.S.C. § 1382c(a)(3)(B).

The Commissioner has established a five-step evaluation process to determine whether an

individual is disabled as defined by the Social Security Act.  20 C.F.R. § 404.1520.  The

Supreme Court has recognized the validity of this sequential evaluation process.  *Bowen v.*

*Yuckert*, 482 U.S. 137, 140-42 (1987).  Under the five-step sequential evaluation process, the

decision-maker determines:

---

[2] While the Supplemental Security Income program has special economic eligibility
requirements, the requirements for establishing disability under Title XVI, 42 U.S.C. §
1382c(a)(3) and Title II, 42 U.S.C. § 423(d), are identical, so "decisions under these sections are
cited interchangeably."  *Donato v. Sec'y of Health and Human Servs.*, 721 F.2d 414, 418 n.3 (2d
Cir. 1983) (citation omitted).

> (1) whether the claimant is currently engaged in substantial gainful activity; (2) whether the claimant has a severe impairment or combination of impairments; (3) whether the impairment meets or equals the severity of the specified impairments in the Listing of Impairments; (4) based on a "residual functional capacity" assessment, whether the claimant can perform any of his or her past relevant work despite the impairment; and (5) whether there are significant numbers of jobs in the national economy that the claimant can perform given the claimant's residual functional capacity, age, education, and work experience.

*McIntyre v. Colvin*, 758 F.3d 146, 150 (2d Cir. 2014). "If at any step a finding of disability or non-disability can be made, the SSA will not review the claim further." *Barnhart v. Thomas*, 540 U.S. 20, 24 (2003).

The plaintiff-claimant bears the burden of proof regarding the first four steps. *Kohler v. Astrue*, 546 F.3d 260, 265 (2d Cir. 2008) (quoting *Perez v. Chater*, 77 F.3d 41, 46 (2d Cir. 1996)). If the plaintiff-claimant meets his or her burden of proof, the burden shifts to the defendant-Commissioner at the fifth step to prove the plaintiff-claimant is capable of working. *Id.*

**B.     Scope of Review**

In reviewing a final decision of the Commissioner, a court must determine whether the correct legal standards were applied and whether substantial evidence supports the decision. *Featherly v. Astrue*, 793 F. Supp. 2d 627, 630 (W.D.N.Y. 2011) (citations omitted). A reviewing court may not affirm the ALJ's decision if it reasonably doubts whether the proper legal standards were applied, even if the decision appears to be supported by substantial evidence. *Johnson v. Bowen*, 817 F.2d 983, 985 (2d Cir. 1987).

A court's factual review of the Commissioner's final decision is limited to the determination of whether there is substantial evidence in the record to support the decision. 42

4

U.S.C. § 405(g); *Rivera v. Sullivan*, 923 F.2d 964, 967 (2d Cir. 1991).  An ALJ must set forth the

crucial factors justifying his findings with sufficient specificity to allow a court to determine

whether substantial evidence supports the decision.  *Roat v. Barnhart*, 717 F. Supp. 2d 241, 248

(N.D.N.Y. 2010); *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).  "Substantial evidence"

is evidence amounting to "more than a mere scintilla," and has been defined as "such relevant

evidence as a reasonable mind might accept as adequate to support a conclusion."  *Richardson v.*

*Perales*, 402 U.S. 389, 401 (1971) (quotation marks and citation omitted).  Where evidence is

deemed susceptible to more than one rational interpretation, the ALJ's conclusion must be

upheld.  *See Rutherford v. Schweiker*, 685 F.2d 60, 62 (2d Cir. 1982).

   "To determine on appeal whether an ALJ's findings are supported by substantial

evidence, a reviewing court considers the whole record, examining the evidence from both sides,

because an analysis of the substantiality of the evidence must also include that which detracts

from its weight."  *Williams v. Bowen*, 859 F.2d 255, 258 (2d Cir. 1988).  If supported by

substantial evidence, the Commissioner's findings must be sustained "even where substantial

evidence may support the plaintiff's positions and despite that the court's independent analysis

of the evidence may differ from the [Commissioner's]."  *Rosado v. Sullivan*, 805 F. Supp. 147,

153 (S.D.N.Y. 1992).  A reviewing court cannot substitute its interpretation of the administrative

record in place of the Commissioner's if the record contains substantial support for the ALJ's

decision.  *Rutherford*, 685 F.2d at 62 (2d Cir. 1982).

   C.   **Standards for ALJ Evaluation of Opinion Evidence**

   In making a disability determination, the ALJ weighs all the evidence of record and

carefully considers medical source opinions about any issue.  SSR 96-5p, 1996 WL 374183, at

*2-3 (1996).  Under 20 C.F.R. §§ 404.1527(e) and 416.927(e), some issues are not "medical

issues," but are "administrative findings." The responsibility for determining these issues

belongs to the Commissioner. *See* SSR 96-5p, 1996 WL 374183, at *2. These issues include

whether the plaintiff's impairments meet or equal a listed impairment; the plaintiff's Residual

Functional Capacity ("RFC"); how the vocational factors apply; and whether the plaintiff is

"disabled" under the Act. *Id.*

In evaluating medical opinions on issues reserved to the Commissioner, the ALJ must

apply the factors listed in 20 C.F.R. §§ 404.1527(d) and 416.927(d). The ALJ must clearly state

the legal rules being applied and the weight being accorded to the evidence considered.

*Drysdale v. Colvin*, No. 14-CV-722, 2015 WL 3776382, at *2 (S.D.N.Y. June 16, 2015) (citing

*Rivera v. Astrue*, No. 10 Civ. 4324, 2012 WL 3614323, at *8 (E.D.N.Y. Aug. 21, 2012) (citation

omitted)).

In terms of weighing opinion evidence, the Second Circuit has long recognized the

treating physician rule set out in 20 C.F.R. § 404.1527(c).[3] "Thus, the opinion of a claimant's

treating physician as to the nature and severity of the impairment is given controlling weight so

long as it is well-supported by medically acceptable clinical and laboratory diagnostic techniques

and is not inconsistent with the other substantial evidence in [the] case record." *Greek v. Colvin*,

802 F.3d 370, 375 (2d Cir. 2015) (quoting *Burgess v. Astrue*, 537 F.3d 117, 128 (2d Cir. 2008)).

However, there are situations where the treating physician's opinion is not entitled to controlling

weight, in which case "the ALJ must explicitly consider, *inter alia*: (1) the frequen[c]y, length,

---

[3] For claims filed on or after March 27, 2017, a new set of regulations apply. These new regulations do "not defer or give any specific evidentiary weight, including controlling weight, to any medical opinion(s)." 20 C.F.R. § 416.920c(a). But since Plaintiff filed her claim on June 1, 2016, the treating physician rule applies. *See Claudio v. Berryhill*, No. 3:17-CV-1228 (MPS), 2018 WL 3455409 at *3 n.2 (D. Conn. July 18, 2018) ("Since [the plaintiff] filed her claim before March 27, 2017, I apply the treating physician rule under the earlier regulations.").

nature, and extent of treatment; (2) the amount of medical evidence supporting the opinion; (3) the consistency of the opinion with the remaining medical evidence; and (4) whether the physician is a specialist." *Greek*, 802 F.3d at 375 (quoting *Selian v. Astrue*, 708 F.3d 409, 418 (2d Cir. 2013)). "Where an ALJ's reasoning and adherence to the Regulations is clear, she is not required to explicitly go through each and every factor of the Regulation." *Blinkovitch v. Comm'r of Soc. Sec.*, No. 3:15-CV-1196 (GTS/WBC), 2017 WL 782979, at *4 (N.D.N.Y. Jan. 23, 2017) (citing *Atwater v. Astrue*, 512 F. App'x 67, 70 (2d Cir. 2013)), adopted by 2017 WL 782901 (N.D.N.Y. Feb. 28, 2017). After considering these factors, the ALJ must "comprehensively set forth [his] reasons for the weight assigned to a treating physician's opinion." *Greek*, 802 F.3d at 375 (quoting *Burgess*, 537 F.3d at 129) (alteration in original). "The failure to provide 'good reasons' for not crediting the opinion of a claimant's treating physician is a ground for remand." *Id.* (quoting *Burgess*, 537 F.3d at 129-30).

The factors for considering opinions from non-treating medical sources are the same as those for assessing treating sources, with the consideration of whether the source examined the claimant replacing the consideration of the treatment relationship between the source and the claimant. *See* 20 C.F.R. § 404.1527(c)(1)-(6). Additionally, when weighing opinions from sources who are not considered "medically acceptable sources" under the regulations, the ALJ must consider the same factors as used for evaluating opinions from medically acceptable sources. *Saxon v. Astrue*, 781 F. Supp. 2d 92, 104 (N.D.N.Y. 2011) (citing *Canales v. Comm'r of Soc. Sec.*, 698 F. Supp. 2d 335, 344 (E.D.N.Y. 2010)); SSR 06-03p, 2006 WL 2329939.

### D.    Standards for ALJ Evaluation of Symptoms

In evaluating a plaintiff's RFC for work in the national economy, the ALJ must take the plaintiff's reports of pain and other symptoms into account. *Genier v. Astrue*, 606 F.3d 46, 49

7

(2d Cir. 2010). The ALJ must carefully consider "all the evidence presented by claimants regarding their symptoms, which fall into seven relevant factors including 'daily activities' and the 'location, duration, frequency, and intensity of [their] pain or other symptoms.'" *Del Carmen Fernandez v. Berryhill*, No. 18-CV-326, 2019 WL 667743, at *9 (S.D.N.Y. Feb. 19, 2019) (citing 20 C.F.R. § 404.1529(c)(3); Social Security Ruling (SSR) 16-3p, *Titles II and XVI: Evaluation of Symptoms in Disability Claims*, 81 FR 14166-01 at 14169-70, 2016 WL 1020935 (Mar. 16, 2016)).

In 2016 the Commissioner eliminated the use of term "credibility" from the "subregulatory policy" because the regulations themselves do not use the term. SSR 16-3p, 81 FR at 14167. Instead, symptom evaluation tracks the language of the regulations.[4] The evaluation of symptoms involves a two-step process. First, the ALJ must determine, based upon the objective medical evidence, whether the medical impairments "could reasonably be expected to produce the pain or other symptoms alleged . . . ." 20 C.F.R. §§ 404.1529(a), (b); 416.929(a), (b).

If so, at the second step, the ALJ must consider "'the extent to which [the claimant's] alleged functional limitations and restrictions due to pain or other symptoms can reasonably be accepted as consistent with the [objective medical evidence] and other evidence to decide how [the claimant's] symptoms affect [her] ability to work.'" *Barry v. Colvin*, 606 F. App'x 621, 623

---

[4] The standard for evaluating subjective symptoms has not changed in the regulations. Rather, the term "credibility" is no longer used, and SSR 16-3p makes it clear the evaluation of the claimant's symptoms is not "an evaluation of the claimant's character." 81 FR at 14167. The court will remain consistent with the terms as used by the Commissioner.

(2d Cir. 2015) (citing inter alia 20 C.F.R. § 404.1529(a); *Genier v. Astrue*, 606 F.3d at 49) (alterations in original).[5]

If the objective medical evidence does not substantiate the claimant's symptoms, the ALJ must consider the other evidence. *Cichocki v. Astrue*, 534 F. App'x 71, 76 (2d Cir. 2013) (citing superseded SSR 96-7p). The ALJ must assess the claimant's subjective complaints by considering the record in light of the following symptom-related factors: (1) claimant's daily activities; (2) location, duration, frequency, and intensity of claimant's symptoms; (3) precipitating and aggravating factors; (4) type, dosage, effectiveness, and side effects of any medication taken to relieve symptoms; (5) other treatment received to relieve symptoms; (6) any measures taken by the claimant to relieve symptoms; and (7) any other factors concerning claimant's functional limitations and restrictions due to symptoms. 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3).

The ALJ must provide specific reasons for the determination. *Cichocki*, 534 F. App'x at 76. However, the failure to specifically reference a particular relevant factor does not undermine the ALJ's assessment as long as there is substantial evidence supporting the determination. *Id. See also Del Carmen Fernandez v. Berryhill*, 2019 WL 667743 at *11 (citing *Rousey v. Comm'r of Soc. Sec.*, 285 F. Supp. 3d 723, 744 (S.D.N.Y. 2018)). "[R]emand is not required where 'the evidence of record allows the court to glean the rationale of an ALJ's decision.'" *Cichocki*, 534 F. App'x at 76 (quoting *Mongeur v. Heckler*, 722 F.2d 1033, 1040 (2d Cir. 1983)).

---

[5] The court in *Barry* also cited SSR 96–7p, 1996 WL 374186, at *2 (July 2, 1996) which was superseded by SSR 16-3p. As stated above, the factors considered are the same under both rulings. The 2016 ruling has removed the emphasis on "credibility."

9

### III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation promulgated by the Commissioner for adjudicating disability claims.  (T. 29-37.)  In his July 18, 2018, decision, the ALJ found Plaintiff's last date insured was December 31, 2017, and Plaintiff had not engaged in substantial gainful activity since her amended alleged onset date of June 2, 2015.  (T. 29.)  The ALJ determined Plaintiff has the following severe impairments: degenerative disc disease of the lumbar spine, status post discectomy; depression; and anxiety.  (T. 30.)  The ALJ determined Plaintiff did not have an impairment or combination of impairments meeting or medically equaling one of the listed impairments in 20 C.F.R. § 404, Subpart P, Appendix 1.  (T. 30-32.)  He found Plaintiff has the RFC to perform light work as defined in 20 C.F.R. 404.1567(b) and 416.967(b) except Plaintiff "can perform only simple routine tasks, can make only simple work-related decisions, and can interact with supervisors, co-workers, or the public only occasionally.  (T. 32-35.)  The ALJ determined Plaintiff is unable to perform any past work; is defined as a younger individual age 18-49 on the alleged disability onset date; has at least a high school education; and is able to communicate in English.  (T. 35-36.)  At step five, considering Plaintiff's age, education, work experience, and RFC, together with the vocational expert ("VE") testimony, the ALJ concluded Plaintiff is "not disabled."  (T. 36-37.)  Thus, the ALJ determined Plaintiff has not been under a disability, as defined in the Social Security Act, from June 2, 2015, through the decision date of July 18, 2018.  (T. 37.)

### IV.    THE PARTIES' CONTENTIONS

Plaintiff contends the RFC is not supported by substantial evidence because the ALJ: (1) fails to properly weigh the medical opinion evidence; (2) fails to properly consider Plaintiff's testimony regarding her symptoms; and (3) reaches a Step Five determination not based on

substantial evidence.  (Dkt. No. 10 at 12-18.)  In response, the Commissioner contends the ALJ's

decision applies the correct legal standards and is supported by substantial evidence.  (Dkt. No.

13 at 4-17.)

## V.      THE COURT'S ANALYSIS

### A.      Substantial Evidence Supports the ALJ's Analysis of the Record Evidence and Plaintiff's RFC

A claimant's RFC is the most she can do despite her limitations.  20 C.F.R. §

404.1545(a)(1).  "Ordinarily, RFC is the individual's maximum remaining ability to do sustained

work activities in an ordinary work setting on a regular and continuing basis.  A regular and

continuing basis means eight hours a day, for five days a week, or an equivalent work schedule."

*Pardee v. Astrue*, 631 F. Supp. 2d 200, 210 (N.D.N.Y. 2009) (citing *Melville v. Apfel*, 198 F.3d

45 52 (2d Cir. 1999)).  "In making a residual functional capacity determination, the ALJ must

consider a claimant's physical abilities, mental abilities, symptomology, including pain and other

limitations which could interfere with work activities on a regular and continuing basis."  *Id*.

(citing 20 C.F.R. § 404.1545(a)).  "Ultimately, '[a]ny impairment-related limitations created by

an individual's response to demands of work . . . must be reflected in the RFC assessment.'"

*Hendrickson v. Astrue*, No. 11-CV-0927 (ESH), 2012 WL 7784156, at *3 (N.D.N.Y. Dec. 11,

2012) (quoting SSR 85-15, 1985 WL 56857, at *8).  The RFC determination "must be set forth

with sufficient specificity to enable [the Court] to decide whether the determination is supported

by substantial evidence."  *Ferraris v. Heckler*, 728 F.2d 582, 587 (2d Cir. 1984).

It is the province of the ALJ to resolve genuine conflicts in the record.  *Veino v.*

*Barnhart*, 312 F.3d at 588.  However, the Commissioner need not "reconcile explicitly every

shred of medical testimony."  *Galiotti v. Astrue*, 266 F. App'x 66, 66 (2d Cir. 2008) (citing

*Fiorello v. Heckler*, 725 F.2d 174, 176 (2d Cir. 1983)).  Here, the ALJ resolved conflicts between the various medical opinions by assigning the greatest weight to those portions of the medical opinions deemed most consistent with Plaintiff's overall treatment record and activities. In doing so, the ALJ appropriately evaluated the conflicting medical evidence, and made an RFC finding consistent with the overall record.  *See Matta v. Astrue*, 508 F. App'x. 53, 56 (2d Cir. 2013) (although ALJ's conclusion did not perfectly correspond with any of the opinions of medical sources, ALJ was entitled to weigh all of the evidence available to make an RFC finding consistent with the record as a whole).  In light of the ALJ's detailed analysis of Plaintiff's medical history, the relevant medical opinions, Plaintiff's testimony, and her activities of daily living, this Court concludes the RFC determination was supported by substantial evidence, as summarized below.

### 1.    Plaintiff's Physical Limitations

Plaintiff contends the ALJ did not properly weigh the medical opinion evidence regarding Plaintiff's physical limitations, in particular the opinion of Plaintiff's treating orthopedic surgeon, Dr. Thomas Haher, and thus erred in finding Plaintiff was capable of performing light work.  (Dkt. No. 10 at 12-14.)  This Court disagrees, and finds the ALJ's RFC assessment of Plaintiff's physical impairments is supported by substantial evidence.

### a.  Dr. Thomas Haher

Dr. Haher completed a Medical Source Statement on April 12, 2016.  (T. 388-391.) Using the check-box form with minimal narrative detail, Dr. Haher opined Plaintiff could frequently lift less than 10 pounds, and occasionally lift up to ten pounds.  (T. 388.)  He also

opined Plaintiff could walk approximately five minutes[6] before needing to rest, could balance, kneel, crouch, crawl, stoop, bend, and twist for a total of one hour per day, but could not climb stairs, a ladder, rope, or scaffold.  (T. 389.)

The ALJ gave a number of reasons for assigning "little weight" to Dr. Haher's opinion regarding physical limitations.  First, the check-box form did not cite any objective clinical findings to support the limitations described therein. (T. 34, 388-391.)  "[C]ourts have routinely recognized the failure to provide a requested narrative explanation on a check-box form as a legitimate reason for affording a treating source opinion limited weight."  *See, e.g., Z.J.F. by Conkling v. Comm'r of Soc. Sec*., No. 6:16-CV-1397 (WBC)*,* 2018 WL 1115516, at *6 (N.D.N.Y. Feb. 27, 2018) (citing *Camille v. Colvin,* 652 F. App'x. 25, 27 (2d Cir. 2016)); *Jones v. Comm'r of Soc. Sec.,* No. 3:15-CV-429 (GTS/WBC), 2016 WL 11477508, at *10 (N.D.N.Y. Aug. 8, 2016), *report and recommendation adopted*, 2016 WL 4991605 (N.D.N.Y. Sept. 19, 2016).

Second, the ALJ found the restrictive limitations described in Dr. Haher's opinion were not consistent with the overall medical evidence, including Dr. Haher's treatment notes.  (T. 34.) As the ALJ described it, "[i]t is acknowledged that the claimant has a 'severe' back disorder and recently underwent back surgery.  However, the record indicates that the claimant has had a benign postoperative course, is doing well, and that her back and leg pain are resolving."  (*Id*.)

To explain his decision, the ALJ summarized Plaintiff's treatment history, both before and after her surgery.  (T. 33-35.)  Plaintiff reported she first experienced significant back pain in

---

[6]  Dr. Haher failed to check the box indicating whether he was opining Plaintiff could walk for five "minutes" or five "blocks."  (T. 388.)  Plaintiff has interpreted Dr. Haher's opinion as limiting her to five minutes of walking (Dkt. No. 10, at 8), which is consistent with her own description of her abilities.  (T. 70, 279.)  Defendant has not contested this interpretation, so the court has adopted it for purposes of this memorandum-decision.

13

June 2015, although there is evidence showing some level of back pain dating back to at least 2013.  (T. 274, 375, 436, 521.)  She first saw Dr. Haher in September 2015, and reported mild pain, burning and tingling on the left side of her lumbar spine.  (T. 375.)  The pain worsened by sitting and standing.  (*Id*.)  On examination, Dr. Haher found Plaintiff to be in "moderate distress," with a normal gait, and able to walk on her heels and toes.  (T. 377.)  She was able to climb onto the examination table without assistance, and generally ambulated well.  (*Id*.)  He found Plaintiff had "moderately limited" range of motion of the lumbar spine in all directions. (*Id*.)  She retained full strength in her lower extremities, and normal sensation to light touch. (*Id*.)  An MRI ordered by Dr. Haher showed a disc extrusion encroaching on a nerve on the left side of Plaintiff's lower back, supporting his diagnosis of lumbar radiculopathy.  (T. 374, 378.)

Subsequent visits produced similar examination results.  Dr. Haher consistently found a normal gait, with good ambulation and full strength in the lower extremities despite persistent lower back pain on the left side.  (T. 375, 377, 423, 426.)  The ALJ cited Dr. Haher's examination notes dated shortly before Plaintiff's October 2017 surgery, again depicting Plaintiff with full or near full strength in all extremities, normal sensation, equal and symmetrical reflexes, full range of motion with some episodes of decreased motion of the lumbar spine, and a normal gait with full ambulation.  (*Id*.)  In July 2017, Plaintiff showed a normal gait, and was able to walk on heels and toes, despite "moderate" pain in the lower back.  (T. 966.)  Dr. Haher noted "she ambulates well."  (T. 970.)  She showed full strength in her lower extremities but moderate pain and "moderately limited" range of motion in the lumbar spine.  (*Id*.)  Her straight leg test was negative bilaterally.  (*Id*.)  In August 2017, Dr. Haher found "full flexion, extension, lateral bending bilaterally, and rotation bilaterally in the lumbar spine, with some pain on flexion and extension.  (T. 958.)  Plaintiff had a normal gait, and was able to walk heel and toe without

14

difficulty.  (*Id*.)  Dr. Haher rated Plaintiff's motor strength to be 5 out of 5.  (*Id*.)  An MRI of

Plaintiff's lumbar spine from August 1, 2017, showed slightly greater disc extrusion at the L5-S1

vertebrae, impinging on one or more nerves.  (T. 958, 972-973.)  On October 9, 2017, Dr. Haher

recommended surgery to address the issue, but warned it may not result in immediate relief.  (T.

993.)

Dr. Haher's examination reports are consistent with other medical examinations dated

prior to Plaintiff's surgery and relied upon by the ALJ.  In October 2015, Nurse Practitioner

("NP") Mara Morabito found Plaintiff to have normal gait, with full strength and range of motion

in her lower extremities, despite her reports of lumbar pain averaging a 6/10.  (T. 1004.)  In May

2017, Dr. Islam Hassan found full strength in all of Plaintiff's extremities, with appropriate gait,

intact coordination, and full sensation.  (T. 1017.)  In October 2017, pre-surgery examination

notes from NP Paulette Miller found "adequate" range of motion in the upper and lower

extremities, with full grip strength in both hands, and full leg strength bilaterally.  (T. 1024.)

Plaintiff demonstrated a steady gait and was able to balance without assistance.  (*Id*.)

Dr. Haher performed a lumbar discectomy on October 18, 2017, to excise the herniated

disc at L5-S1 and decompress the affected nerve root.  (T. 1034.)  During follow-up visits in

November 2017, Dr. Haher observed the surgery wound to be healing with no evidence of

complications.  (T. 987, 990.)  Plaintiff demonstrated an "appropriate" pain level under the

circumstances, with "mild" loss of range of motion approximately one month after surgery.  (T.

987.)  Dr. Haher described Plaintiff as "doing well."  (*Id*.)

Plaintiff contends the ALJ failed to properly apply the treating physician rule by failing to

explicit explain his application of the *Burgess* factors to Dr. Haher's opinion.  However, the

ALJ's decision includes a discussion of Dr. Haher's role as Plaintiff's treating orthopedist,

referencing his first evaluation of Plaintiff in June 2015.  (T. 33-34.)   As summarized above, the

ALJ's decision also includes detailed consideration of Plaintiff's treatment history and the other

medical opinion evidence, and a recitation of conflicts between Dr. Haher's opinion and the

record.  (T. 34-35.)   Accordingly, the ALJ fulfilled his obligations under the treating physician

rule with respect to Dr. Haher, and his assignment of little weight was supported by substantial

evidence.

### b.  Dr.  Ifechuckwude Ojugbeli

On June 6, 2016, Dr. Ojugbeli completed a Medical Source Statement addressing

Plaintiff's physical functional limitations.  (T. 1006-1014.)  Using a similar check-box form as

Dr. Haher, he opined Plaintiff could frequently lift less than ten pounds and occasionally lift up

to 10 pounds.  (T. 1008.)  He opined Plaintiff could walk approximately six minutes without rest,

could continuously sit for one hour at a time, and could continuously stand for one hour.  (T.

1009.)  Dr. Ojugbeli further opined Plaintiff could sit for a total of less than one hour and stand

or walk less than two hours total during the workday and would need to take unscheduled breaks

throughout the day.  (T. 1009-1010.)  He also opined Plaintiff's lower extremities limited her

ability to push and pull, and Plaintiff could engage in activities requiring balancing, kneeling,

crouching, crawling, stooping, bending, or twisting for less than one hour per day.  (T. 1010.)  In

Dr. Ojugbeli's opinion, Plaintiff was also limited in her ability to reach in all directions, and in

her ability to handle, reach, and feel with her hands.  (T. 1011.)

The ALJ assigned Dr. Ojugebeli's opinion "little weight," using the same analytical

approach he had applied to Dr. Haher's opinion. (T. 34-35.)  He noted the lack of objective

findings on the check-box form. (T. 34.)  He also noted the lack of medical evidence to support

the limitations described by Dr. Ojugbeli, and the contrary evidence found in treatment notes

from Dr. Haher, Dr. Hassan, and NPs Morabito and Miller showing a greater tolerance for sitting and standing and full strength in the lower extremities.  (T. 35, 958, 970, 1004, 1017, 1024.)  The ALJ also cited Dr. Ojugbeli's own examination notes dating back to February 27, 2014, typically showing full strength in Plaintiff's extremities, normal lumbar spine range of motion, intact sensation, equal and symmetric reflexes, and normal muscle tone and coordination, despite pain and tenderness in the lower back worsening over time and eventual back surgery.  (T. 34-35, 539, 542, 544-545, 555-556, 567, 571, 928, 933, 939, 977, 981.)  The ALJ thus had substantial evidence for the weight assigned to Dr. Ojudgbeli's opinion.

### c.  Dr. Kalyani Ganesh

Dr. Kalyani Ganesh performed a consultative physical examination of Plaintiff on July 7, 2016.  (T. 521-524, 576.)  During the examination, Plaintiff described constant lower back pain radiating to her left leg which was aggravated by physical activity.  (T. 521.)  Dr. Ganesh observed a normal gait, and the ability to walk on heels and toes without difficulty.  (T. 522.)  Plaintiff required no assistive device and needed no assistance changing for the examination, rising from a chair, or getting on and off the examination table.  (*Id.*)  Dr. Ganesh found Plaintiff had full flexion, extension, lateral flexion, and rotary movement in the cervical spine and lumbar spine.  (T. 522-523.)  She demonstrated full range of motion in the shoulders, elbows, forearms, wrists, hips, knees, and ankles bilaterally.  (T. 523.)  Dr. Ganesh found full strength in Plaintiff's upper and lower extremities, intact dexterity in the hands and fingers, and full grip strength in both hands.  (*Id.*)

Based on her examination, Dr. Ganesh opined Plaintiff had no limitations with regard to sitting, standing, and walking, and had only mild limitations in lifting, carrying, pushing, and pulling.  (T. 523.)  The ALJ gave this consultative opinion "significant weight" due to its

17

consistency with the objective findings in the consultative examination report and the examination notes of Dr. Ojugbeli, Dr. Haher, Dr. Hassan, and NPs Morabito and Miller.  (T. 34.)

As set forth above, the ALJ explained his reliance on Dr. Ganesh's consultative opinion and supporting medical evidence in determining Plaintiff could perform the physical requirements of light work.  The ALJ also explained his rationale for assigning less than controlling weight to the opinions of treating physicians Dr. Haher and Dr. Ojugbeli.  Therefore, this Court finds that the ALJ's physical RFC determination is supported by substantial evidence.

### 2.    Plaintiff's Mental Limitations

#### a.  Dr. Prashant Kaul

Dr. Prashant Kaul, Plaintiff's treating psychiatrist, completed a "Mental Impairment Questionnaire" on November 13, 2015.  (T. 391-397.)  He had been treating Plaintiff's anxiety and depression for approximately eight months when he issued the opinion.  (T. 392, 398, 400.) Using a check-box form, Dr. Kaul opined Plaintiff was "not significantly limited" in several functional areas: ability to understand and remember very short and simple instructions; ability to carry out very short and simple instructions; and ability to work in coordination with or proximity to others without being distracted by them.  (T. 391.)  He also opined Plaintiff was "seriously limited, but not precluded" from the following functional areas[7]: ability to accept instructions and respond appropriately to criticism from supervisors; ability to get along with coworkers or peers without distracting them or exhibiting behavioral extremes; ability to respond appropriately to changes in the work setting; and ability to deal with normal work stress.  (*Id.*)  In

---

[7]  In a separate portion of his opinion, Dr. Kaul characterized Plaintiff's abilities in several of these same areas to be "limited but satisfactory."  (T. 394.)

Dr. Kaul's opinion, Plaintiff had moderate limitations in social functioning but was not significantly limited in her activities of daily living or activities requiring concentration, persistence, and pace.  (*Id*.)

Dr. Kaul opined Plaintiff had "unlimited or very good" abilities in several functional areas: understanding and remembering detailed instructions; carrying out detailed instructions; and setting realistic goals or making plans independently of others.  (T. 395.)  He also opined Plaintiff had "limited but satisfactory abilities with regard to dealing with stress of semiskilled or skilled work; interacting appropriately with the general public; and maintaining socially appropriate behavior.  (T. 395.)  In his opinion, Plaintiff's impairments would cause her to be absent from work about one day per month.  (T. 397.)

The ALJ assigned "great weight" to Dr. Kaul's opinion, based on its consistency with the clinical evidence from mental status examinations conducted by Dr. Kaul and others.  (T. 39.)  In reaching this decision, the ALJ reviewed Plaintiff's mental health notes from the record, dating from her first treatment for anxiety and depression in August 2011.  (T. 33, 581-595.)  He noted clinical findings showing Plaintiff had generally presented as fully oriented, pleasant, and cooperative, with calm behavior and logical thought processes, despite experiencing depressed moods and episodes of poor insight.  (T. 33-34, 517, 585, 593, 609, 619, 629-630, 641, 662, 674, 682, 860, 1057.)  The ALJ also cited Dr. Kaul's May 20, 2016, treatment note opining on the potential therapeutic benefits of a return to work, if Plaintiff was able to tolerate it physically. (T. 35, 598.)

The ALJ's assessment is consistent with the record evidence.  Plaintiff first experienced symptoms of depression and anxiety after conflicts with management at her work.  (T. 581.)  Her anxiety occasionally resulted in panic attacks while in public and prompted her to isolate from

others.  (T. 596-597, 607-608, 615, 617.)  During sessions with her psychiatrist, Plaintiff

generally exhibited good eye contact, stable moods, logical and coherent thought processes, and

intact judgment and insight.  (T. 610, 614, 624, 633, 641-642, 860, 1061.)  As noted by the ALJ,

mental health evaluations during visits with Dr. Ojugbeli likewise showed a cooperative attitude,

appropriate mood, clear and appropriate thought processes, and intact judgment and insight.  (T.

33-34, 539, 543, 545, 548, 550, 553, 556-557, 559, 562, 567, 571, 928, 933, 939, 951, 977, 981.)

Plaintiff's symptoms appeared generally well-controlled with medication and worsened when

she had to temporarily discontinue use prior to surgery and other treatment.  (T. 1043, 1057.)

### b.  Dr. Jeanne Shapiro

Dr. Jeanne Shapiro performed a consultative psychiatric examination of Plaintiff on July

7, 2016.  (T. 515-519.)  During the examination, Plaintiff exhibited a cooperative demeanor and

was responsive to questions, with adequate social skills.  (T. 517.)  Plaintiff had a coherent and

goal directed thought process with no evidence of delusions, hallucinations, or disordered

thinking, despite a depressed and tearful mood.  (*Id*.)  She showed intact attention and

concentration, and was able to perform simple counting and calculation exercises.  (*Id*.)

Plaintiff's recent and remote memory skills were intact, and she showed "fair" judgment and

insight.  (T. 517-518.)  Plaintiff reported she was able to independently dress, shower, and

groom, and prepare simple meals with a microwave.  (T. 518.)

Dr. Shapiro opined Plaintiff had no limitations in understanding and following simple

instructions and directions; and no limitations performing simple or complex tasks.  (*Id*.)  In her

opinion, Plaintiff "may have mild-moderate limitations maintaining attention and concentration

for tasks depending upon her level of anxiety and depression."  (*Id*.)  Dr. Shapiro also opined

Plaintiff had "mild" limitations regarding her ability to make appropriate decisions, and was

20

"mildly-moderately" limited in her abilities to consistently relate to and interact well with others and to deal with stress. (T. 518.) She further opined Plaintiff's difficulties in these areas stemmed from her psychiatric symptoms, but suggested her prognosis may improve over time with continued treatment. (T. 518-519.)

The ALJ assigned "great weight" to Dr. Shapiro's opinion, based upon its consistency with Plaintiff's mental health treatment record, the consultative examination results, and most of Dr. Kaul's opinion. (T. 39.)

### c. Dr. J. Dambrocia

Dr. Dambrocia, a state agency psychological consultant, issued an opinion on August 18, 2016, based upon his review of Plaintiff's medical records and Dr. Shapiro's consultative examination. (T. 91-108.) Dr. Dambrocia opined Plaintiff was moderately limited in her ability to perform activities within a schedule, maintain regular attendance, and be punctual within customary tolerances, and in her ability to complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods. (T. 120.) The state consultant also found moderate limitations in Plaintiff's ability to interact appropriately with the general public, to accept instructions and respond appropriately to criticism from supervisors, and to respond appropriately to changes in the work setting. (T. 121.) In Dr. Dambrocia's opinion, Plaintiff is capable of performing simple work tasks and following simple directions in a competitive work environment involving mainly brief and superficial contact with supervisors, coworkers, and the public. (T. 117.)

The ALJ assigned "great weight" to Dr. Dambrocia's opinion, due to its consistency with Plaintiff's mental health treatment records, Dr. Shapiro's consultative opinion, and most portions

of Dr. Kaul's opinion.  (T. 35.)  "S]tate agency physicians are qualified as experts in the

evaluation of medical issues in disability claims," and as such, "their opinions may constitute

substantial evidence if they are consistent with the record as a whole."  *Leach ex rel. Murray v.*

*Barnhart*, No. 02-CIV-3561 (RWS); 2004 WL 99935, at *9 (S.D.N.Y. Jan. 22, 2004) (citing

*Mongeur*, 722 F.2d at 1039); *see also Lewis v. Commissioner,* No. 00–CV–1225, 2005 WL

1899399, at *3 (N.D.N.Y. Aug. 2, 2005)*; Blanchard v. Berryhill*, No.. 3:17-CV-01534 (KAD);

2019 WL 859266, at *5 (D. Conn. Feb. 22, 2019).

Plaintiff argues the ALJ erred in his mental RFC determination by ignoring Dr. Kaul's

opinion that Plaintiff would be absent from work one day per month in the RFC determination

despite assigning "great weight" to Dr. Kaul's overall opinion.  (Dkt. No. 10 at 15.)  This

argument is not persuasive.  In formulating Plaintiff's RFC, the ALJ was not required to accept

every limitation in the various medical opinions nor craft an RFC mirroring a particular opinion.

*See Matta v. Astrue*, 508 F. App'x 53, 56 (2d Cir. 2013) ("Although the ALJ's conclusion may

not perfectly correspond with any of the opinions of medical sources cited in his decision, he [is]

entitled to weigh all of the evidence available to make an RFC finding that [is] consistent with

the record as a whole."); *Zongos v. Colvin*, No. 5:12-cv-1007 (GLS/ESH), 2014 WL 788791, at

*9 (N.D.N.Y. Feb. 25, 2014) (finding it was within the ALJ's discretion to afford weight to a

portion of a treating physician's opinion, but not to another portion); *see also Veino v. Barnhart*,

312 F.3d 578, 588-89 (2d Cir. 2002) (ALJ did not err in crediting only a small part of treating

physician's report).

The ALJ found that the Kaul, Shapiro, and Dambrocia opinions were "broadly

consistent" and assigned each of them great weight.  However, these opinions were not identical,

and the ALJ had an obligation to resolve inconsistencies between the three psychiatric opinions

when calculating Plaintiff's RFC to be consistent with the overall record evidence.  *See Bliss v. Colvin*, No. 3:13-CV-1086 (GLS/CFH), 2015 WL 457643, at *7 (N.D.N.Y. Feb. 3, 2015) ("It is the ALJ's sole responsibility to weigh all medical evidence and resolve material conflicts where sufficient evidence provides for such."); *accord Petell v. Comm'r of Soc. Sec.*, No.7:12-CV-1596 (LEK/CFH), 2014 WL 1123477, at *10 (N.D.N.Y. Mar. 21, 2014).

Despite arguing the ALJ should have found her impairments would likely cause her to miss at least one day of work per month, Plaintiff has not referenced any record evidence suggesting problems with tardiness or absenteeism beyond the single reference in Dr. Kaul's opinion.  Plaintiff's hearing testimony detailed her difficulties at her prior employment and in unsuccessful attempts to return to work, but did not raise any concerns about her ability to maintain a regular schedule.  (T. 71-74.)  Following a searching review of the record, the court finds no treatment notes or other evidence suggesting that Dr. Kaul's opinion regarding Plaintiff's ability to attend to a regular routine and maintain a regular schedule was more reliable than Dr. Shapiro's opinion.  *Klodzinski v. Astrue*, 274 F. App'x 72, 73 (2d Cir. 2008) ("Because the ALJ did not explicitly acknowledge the 'treating physician rule' or declare why [the treating physician's] opinions were not entitled to controlling weight, we have conducted 'a searching review of the record to assure [Plaintiff] received the rule's procedural advantages.' ") Accordingly, the ALJ's reliance on Dr. Shapiro's opinion over the slightly more restrictive, but unsupported, opinion of treating psychiatrist Dr. Kaul in the discrete area of attendance and maintaining a schedule is supported by substantial evidence, and this Court will not disturb it.

### 3.    Plaintiff's Subjective Complaints

Plaintiff contends the ALJ failed to adequately consider Plaintiff's testimony regarding the functional limitations imposed by her physical and mental impairments and the resulting

impact on her activities of daily living.  In this case, the ALJ was clearly aware of his obligations to evaluate Plaintiff's subjective complaints, and the Court finds no error requiring remand.  The record indicates the ALJ undertook a careful consideration of relevant factors.

In his decision, the ALJ summarized Plaintiff's testimony of extreme back pain radiating down her left leg, and preventing her from walking more than a few minutes before having to sit down.  (T. 32, 67-70, 79-80.)   Plaintiff told the ALJ her October 2017 back surgery had done little to alleviate these problems, and her pain medication only helped intermittently.  (T. 32, 67-68.)  Plaintiff also testified she had "sky high" anxiety on a daily basis, along with memory difficulties, causing repeated frustration. (T. 32, 70, 74, 81-82.)

In considering this testimony, the ALJ reviewed Plaintiff's medical records as described above for the numerous instances where Plaintiff displayed a normal gait, full strength in her lower extremities, intact coordination, along with post-operative reports showing her back surgery was a success, even if Plaintiff had some residual pain.  (T. 33, 958, 966, 970, 1004, 1017.)  The ALJ also considered Plaintiff's treatment records documenting "rare observations of a depressed mood" and Plaintiff's reports of improvement in her symptoms with psychotropic medication.  Mental health evaluations showed no deterioration in Plaintiff's memory.  (T. 34, 391, 395, 517-518, 1017.)  In her hearing testimony, Plaintiff denied any significant problems with attention and concentration, or any difficulty getting along with other people, with the exception of certain former co-workers and supervisors.  (T. 34, 70, 72-74, 516.)

The ALJ also identified Plaintiff's daily activities and discussed the extent to which they did, and often did not, correlate with her subjectively reported limitations, including cleaning, taking out the garbage, putting away laundry, traveling by walking and driving, shopping in stores and online, going to sporting events, using social media, and preparing simple meals.  (T.

34.)  Plaintiff's contention that such evidence was "cherry-picked" to refute her testimony is itself refuted by the fact that the ALJ's description of Plaintiff's activities are drawn directly from Plaintiff's own description of her activities as part of the benefits application process or during medical evaluations.  (T. 276-78, 518, 521, 615.)

Overall, the ALJ identified substantial evidence to conclude Plaintiff's subjective complaints were not consistent with the record evidence, including Plaintiff's hearing testimony and her reports to medical providers.  Doing so was not only consistent with, but required by, SSR 16-3p which states the Social Security Administration "will compare statements an individual makes in connection with the individual's claim for disability benefits with any existing statements the individual made under other circumstances."  Soc. Sec. Ruling 16-3p, 2016 WL 1119029, at *8.  It was thus "well within the ALJ's discretion to compare contradictory statements of daily activities."  *Hayes v. Berryhill*, No. 16-CV-5259 (KBF), 2017 WL 4326118, at *10 (S.D.N.Y. Sept. 28, 2017).  While Plaintiff points to other evidence in the record to support her claim, it was ultimately for the ALJ, not the Court, to resolve such evidentiary conflicts. *Schlichting v. Astrue*, 11 F. Supp. 3d 190, 206 (N.D.N.Y. 2012) (quoting *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).

At best, Plaintiff's complaints regarding the medical opinion evidence, the treatment record, Plaintiff's testimony, and the resulting RFC determination are premised upon a disagreement over how the ALJ resolved arguably conflicting evidence about Plaintiff's functional limitations.  This Court will not reweigh the evidence presented to the ALJ.  *See Warren v. Comm'r of Soc. Sec.*, No. 3:15-CV-1185 (GTS/WBC), 2016 WL 7223338, at *9 (N.D.N.Y. Nov. 18, 2016) ("When applying the substantial evidence test to a finding that a plaintiff was not disabled, the Court 'will not reweigh the evidence presented at the

25

administrative hearing, . . . nor will it determine whether [the applicant] actually was disabled. [Rather], [a]bsent an error of law by the Secretary, [a] court must affirm her decision if there is substantial evidence [in the record] to support it.'") (quoting *Lefford v. McCall*, 916 F. Supp. 150, 155 (N.D.N.Y. 1996) (alteration in original)), *report-recommendation* adopted by 2016 WL 7238947 (N.D.N.Y. Dec. 13, 2016); *Vincent v. Shalala*, 830 F. Supp. 126, 133 (N.D.N.Y. 1993) ("[I]t is not the function of the reviewing court to reweigh the evidence.") (citing *Carroll v. Sec'y of Health and Human Servs.*, 705 F.2d 638, 642 (2d Cir. 1983)).  Accordingly, the Court finds the ALJ's RFC determination to be supported by substantial evidence.

### C.    Substantial Evidence Supports the ALJ's Step Five Determination

The burden shifts to the Commissioner at Step Five "to show there is other work that [the claimant] can perform."  *McIntyre*, 758 F.3d at 150 (quoting *Brault v. Soc. Sec. Admin.*, 683 F.3d 443, 445 (2d Cir. 2012)).  "If a claimant has non-exertional limitations that 'significantly limit the range of work permitted by his exertional limitations,' the ALJ is required to consult with a vocational expert."  *Zabala v. Astrue*, 595 F.3d 402, 410 (2d Cir. 2010) (quoting *Bapp v. Bowen*, 802 F.2d 601, 605 (2d Cir. 1986)).

If the ALJ utilizes a VE at the hearing, the VE is generally questioned using a hypothetical question incorporating Plaintiff's limitations.  *See Aubeuf v. Schweiker*, 649 F.2d 107, 114 (2d Cir. 1981).  The ALJ may rely on a VE's testimony regarding the availability of work as long as the hypothetical facts the expert is asked to consider are based on substantial evidence and accurately reflect Plaintiff's limitations.  *Calabrese v. Astrue*, 358 F. App'x 274, 276 (2d Cir. 2009).  Where the hypothetical is based on an ALJ's RFC analysis which is supported by substantial facts, the hypothetical is proper.  *Id*. at 276-77.

VE Robert Baker testified at the hearing.  (T. 82-86.)  Because this court has found the

26

ALJ's RFC determination was supported by substantial evidence, it also finds the ALJ's hypothetical to VE Baker was proper, and his step five determination was supported by substantial evidence.  Based on the foregoing, the ALJ's decision was based upon correct legal standards, and substantial evidence supports his determination Plaintiff was not under a disability within the meaning of the SSA.  20 C.F.R. § 404.1520(g).

**WHEREFORE**, it is hereby

**ORDERED** that Plaintiff's motion for judgment on the pleadings (Dkt. No. 10) is **DENIED**; and it is further

**ORDERED** that Defendant's motion for judgment on the pleadings (Dkt. No. 13) is **GRANTED**; and it is further

**ORDERED** that Defendant's decision denying Plaintiff disability benefits is **AFFIRMED**, and it is further

**ORDERED** that Plaintiff's Complaint (Dkt. No. 1) is **DISMISSED**.


Dated: September 9, 2020
      Syracuse, New York

Thérèse Wiley Dancks
United States Magistrate Judge

27